I please the court. This case presents an interesting issue as to who has the call in a competency hearing as to whether the defendant should testify or not. Congress in 18 U.S.C. 4247d indicated that the defendant shall have an opportunity, shall be afforded the opportunity to testify. Then we get to the constitutional issue of the Rock case, the United States Supreme Court, and then the Joelson case in the Ninth Circuit. And there in the brief, of course, that indicates that the right of a person to testify is a constitutional right of fundamental dimension. And it is one of those rights that I think in general the defendant has the discretion to decide whether to testify or not. Well, I mean, you know, the statute is pretty clear that he should be, the defendant shall be afforded an opportunity to testify, to call witnesses and to whatnot. The rights are delineated in the statute. I'm setting aside for just a moment the constitutional issue. Isn't the concern here that he may have waived whatever right he had by his conduct in the court? Well, I don't believe he did, Your Honor, because that ship had already sailed. How's that? Well, if you look at the transcript, the court, the prosecutor finished their presentation. Right. The court then asked defense counsel, all right, Mr. Sakutovich. And he answered at this point, on behalf of Mr. Gillenwater, we don't have any evidence to present to the court. And then he says, as his counsel, it's my opinion and advice he not be put under oath and testify. At that point, the court just says, all right, then I think we will just go to judgment, go to argument. Go to argument. So basically at that point, the court has already made a ruling. Meaning that he's not going to be allowed to testify, that there be no testimony allowed from the defendant? Well, I believe that's implicit in that decision that she makes. We're going to go to argument. At that point, it becomes clear there's a dispute between client and counsel. In fact, client had asked that counsel be relieved earlier, and that's not before the court, but it plays into this. You have a dispute going on. Normally, the court doesn't inquire into the issue of whether or not the person is going to testify or not. But when it becomes apparent there's a dispute and Mr. Gillenwater is wanting to assert his statutory and constitutional right to testify. Well, but the lawyer eventually says Mr. Gillenwater wants to testify. He did before she even made the ruling, we'll go to argument. So what I'm saying is his conduct after that point doesn't change anything here. It doesn't change the fact that he was denied the right to testify. The issue was presented by counsel. At that point, the court made sure. Did anybody ever advise him that he had a right to testify? I don't. There's nothing in the record about that, which is another reason why when the issue became apparent, the court should have inquired of, you know, that issue because, again, the statute gives him the right to testify, and I think there's a constitutional right to testify. So what happens then, Mr. Gillenwater is angry about that decision. And, again, even in the context of what the court's powers are to remove a defendant, I don't think he was given an opportunity to have the judge admonish him, tell him, look, if you continue this, you're going to be removed. But the judge, at least as I read it, the judge three times said that's enough. It wasn't like one warning and then you're out of here. It's like he tried to get him to stop first, then he did it another time, another time. Now what he didn't do is he didn't say if you don't stop, you'll be ejected from the courtroom. But I don't know. That's what bothers me about this case is the nature of the conduct. And I don't know that the judge has to be that explicit, saying what will happen to him if he doesn't stop when the judge says enough. I think the Ives case in the holding does talk about that, that the court held in that case that the judge should admonish the person and tell them what's going to happen if they don't stop. Is the Ives case one of our cases? It is. It's a Ninth Circuit case. It's cited in the government's brief in the section on standards of review. And so basically, you know, with all due respect to Judge Peterson, I think she was a little bit thin-skinned in this situation. And after my client was removed from the courtroom, counsel again reiterates that he does want to testify. The judge never really made a ruling on whether. Did he say to her something like, you're not going to be a judge for long? Well, I guess let me put it this way. I'm not arguing whether the removal itself was proper. What did his statement, that kind of statement, what did it mean? I mean, he's not predicting her retirement, presumably. He said he was going to wait for the Republicans and she would no longer be a judge. The Republicans were going to take care of her. I don't know if she's a Republican or not. It might not help him anyway. But again, I understand what the court's saying. I'm not arguing that what happened after the decision had been made. So what I'm saying is I don't think it's critical to the issue we're talking about. Judge Fischer has a question. I hate to sound out from down here, but the only way to get a word in edgewise is to sound out. Going to the substance of what you're asking for, there's a dilemma in this case about someone who has been diagnosed as incompetent and unable to assist his counsel in defense. Assuming that he has a constitutional right, nonetheless, to be heard at this stage of the proceedings, the counsel made an informed decision as counsel. It would not be in your client's best interest for him to testify under oath, because if he's incompetent, he could, as his outburst may have suggested, he may well have made incriminating statements and therefore have undercut his whole criminal defense. Obviously, there's a serious liberty interest at stake in a pre-trial hearing, in a pre-trial detention situation. So I appreciate the fact that someone has a strong interest in speaking his mind as the defendant. But the balancing that's implicit here is, assuming he is not competent, but nonetheless he exercises against the advice of counsel his right to testify, is there any process by which his statements under oath could be conditionally received and not used against him? Or is the price of his exercising his constitutional right to testify that he is also giving up his constitutional right to remain silent and not incriminate himself? So what do you find or what do you suggest is the appropriate balancing? Well, I think what the Court's point is, you could do something similar to what takes place in suppression hearings, where the person can testify, and unless they take the stand later, that evidence can't be used in the case in chief. Something along those lines could be fashioned. Also, issues about whether the person did or didn't do the crime wouldn't be relevant to the issue of, is this person competent? The Court could require that that area not be dealt with in the hearing. Well, that assumes that he exercises self-restraint when he's on the stand and doesn't ramble off in making wild statements that would be incriminating. But, Your Honor, that's a chance that the defendant, after consultation with counsel, will make. That decision is made all the time on whether a person testifies or not, but it's their call to make. In my opinion, based on the law and statute, and I understand there's concerns on the other side, we probably wouldn't be here, Your Honor, but I would like to reserve the right to talk about that. At least with respect to the statute, at least Congress has struck the balance in favor of allowing the defendant to testify if he wants to. We've been drawing you out with a lot of questions. We'll give you an extra two minutes for about a large part. I appreciate it. Thank you, Your Honor. I'll reserve the balance then. Good morning, Your Honors. Tim Holmes on behalf of the government. First, I think it is worth discussing the decision that defense cites in their brief, the California Appeals Court decision, the Bell decision. People need Bell, which is a 2000 decision. Well, we have a whole statutory scheme here, a federal statutory scheme as well as a federal right at stake. Right. Well, I understand if we're just focusing on whether it's a statutory right, we wouldn't need to look at Bell. Bell also discusses whether it is a constitutional right, and interestingly enough, in Bell, the trial court allowed the defendant to testify at his competency hearing over his counsel's objection, and the Court of Appeals found that that was error because that call, in that context, that call should be made by the counsel and the defendant has a statutory right to testify, but that can be waived by counsel, does not have a constitutional right. So that's kind of the status of the law. We don't always agree with the California Supreme Court. I'm just noting that, Your Honor, because one of the things that's absent from both briefs is binding authority on that issue of whether there's a constitutional right. So that's all I can do. Now, we appreciate that there's an absence of binding authority. That's why we're engaged in this oral argument. This is an adversarial proceeding, correct? Yes, Your Honor. And the government has an interest in this proceeding, correct? Yes, Your Honor. And the consequences can be quite significant for the defendant. Yes, Your Honor. He could be his liberty taken away just on the basis of the finding of this proceeding for a substantial period of time. Yes, Your Honor. And in the process of that, he could be forced, if found to be incompetent, at some point along the way he could be ordered to be subjected to forced medication, correct, which I think is another issue in this case someplace along the line. It has those hearings. And we've said our case law recognizes this pretrial proceeding as a significant, a critical stage in the process, in the criminal proceedings, correct? Correct, Your Honor. So he has a constitutional right to be present. I'm not going to debate that, Your Honor. I don't know. You don't think our case law said he has a constitutional right to be present? I don't have case law that says that one way or the other, but I'll defer to the court. I don't think that that's an issue to necessarily debate. Let me ask. Strictest versus Goldsmith. Let me just ask you, though. Is it your position here that his conduct, by his actions in the courtroom, that he waived whatever rights it may be, statutory or constitutional? Well, assuming that counsel could not waive for him. Let's start from that point. The government's position is that, yes, one, his conduct, his own conduct, waived on his own behalf his right to testify. The court acted as though, you know, when it got to that point, the court essentially acted as though counsel could waive his right. The court did, Your Honor. That's what's troubling here. And then he gets upset. You know, he's not a model defendant. I mean, you know, I presided over many, many criminal trials, both in the district court and in the state court, where defendants can be rather, you know, offensive. I agree, Your Honor. The court reacted, I think, the way the court did based upon their own judgment. I think the court, to some sense, to some extent, viewed itself as trying to protect Mr. Gillenwater's interests as the court perceived them. That's the way I would observe it. But I would say that Mr. Gillenwater's interjection of himself personally into the proceeding occurred prior to the outburst. Right. The record reflects that he was speaking loudly to his counsel and the court reporter could hear it and the judge says, don't take any of that down. Well, I mean, I think initially it occurred before that. I mean, he spoke up during his counsel's recross of the government's expert and said, basically, I have a question. Then there was discussion. That question was apparently passed to counsel by a note. Counsel asked that question. Then there's whispering that goes on, which is indicated in the record, but it's not indicated what it is. Then the question's asked. There's more whispering. Then it comes to the point where the defense attorney tells the court that his client would like to testify, but he's advising against it, at which point there's loud whispering. Then the court interjects and says, look, we can hear this. Essentially, the court's saying, we can hear this. I'm asking the court reporter, because the court reporter said, you know, what? You know, basically, I'm trying to get this. And so that put the court on notice, and the court interjected and asked the court reporter not to take it down. So I think the court was trying to be protective of Mr. Gillenwater. What is the current status right now with Mr. Gillenwater? Mr. Gillenwater is gone. Is he in a hospital? He's at Butner in North Carolina. He was sent there for basically to see whether or not he can regain competency. The determination there by Dr. Lucking, who was treating him, supposed to be treating him, was that it required medication. So we had to have cell hearings on that. Those began in July and concluded in November of this year. The defense called his own expert, Dr. Cloninger, who agreed with the diagnosis that he has this disorder, mental disorder, and that he's incompetent. So the debate at that point was about the medication, not about competency. Has there been an order that he be forced? There has been an order, and that order is on appeal. So that's where we're at with that. Well, if his expert agrees he's incompetent, then I guess I have a question as to why does this appeal proceed? I can't answer that question, Your Honor. I mean, as to why the appeals proceed, I would argue that, which is the secondary argument, that there's no prejudice in this case. Well, but the court's order in this proceeding is what determined that he was incompetent. Correct. Right? The second proceeding, the cell proceedings, are mainly to determine whether he's gained competency or whether he can or whether he needs medication or whether it should be forced medication. That's correct. Right? Because they start with the presumption. I mean, they start, he's already been found incompetent. That's correct. But the ---- And he argues here that that finding was made without affording me my right to testify. And that's correct, Your Honors. It was. Let me ask you a practical question. Yes, Your Honor. If he's right now at Butner, is that a hospital? It's a federal correctional institution with a hospital, yes, Your Honor. Okay. So if he's there, he's not out where he can harm the public, what would be the harm in terms of the government's interest in sending it back to the court for a hearing, for a further hearing on his competency? From the government's perspective, there's no particular harm other than just the potential for delay. Okay. Counsel, could you also in that regard address then the question I asked Mr. Gillenwater's counsel, the balancing effect? I take your point that the judge may well have been trying to protect his interests, but assuming he has both a statutory and a constitutional right, so let's just assume that for now, that wasn't waived, and he does testify or testifies, as we've just now been talking, is there a way to minimize or eliminate the risk that in exercising his right to testify on the issue of competency, that he won't be incriminating himself on the ultimate substantive criminal charges? Counsel mentioned one way, for example, on a motion to suppress, that if he doesn't take the stand, then nothing can be used against him. Do you have any thoughts about that or other approaches? Well, I could tell the court that the government would be cooperative in trying to agree to procedures that would accommodate that because I don't have any interest in him not testifying. I think the continuing concern by defense counsel may be he doesn't know, given the potential volatility of his client, whether his conduct may prejudice him with regard to the cell findings the court needed to make. There are other findings down the road that his testimony could have been prejudicial to him about. Would we have the power, just as an Article III court, in this case with the issues presented, to order that he be given a further hearing on competency and that he be allowed to testify? And this is where I'm not sure of our power. Would we have the power to say in that hearing whatever he says can't be used against him in a criminal trial? I don't know, Your Honor. But I'm certainly willing to work with defense counsel to fashion procedures that would not prejudice the defendant at trial. I just have my own recollection in suppression matters. Whenever counsel would ask a defendant to testify, the court would usually tell the defendant, look, if you testify, anything you say can be used against you if you take the stand. That's correct, Your Honor. There was admonishments given to the defendant. But that's with a competent defendant. Yes, I understand that. But, you know, you read the trial. I realize that his diagnosis was a delusional diagnosis. Correct. It's a conspiracy that's out there. Everybody's out there to get him. But, you know, he did seem a little on top of things, you know. Well, I think everyone has said that he's an intelligent individual. But there are three experts that have weighed in on this, the original Dr. Lowe, the doctor from Butner, and his own psychiatrist that have all said that he has a profound disorder that requires treatment and that he's incompetent. Well, incompetent for purposes, you know, it's not insane because we're not dealing with that, but he's not able to assist in his defense is what the determination is. And that the essential nature of his testimony, whatever it might be, would be to simply rant about the conspiracy because what he was concerned about was presenting what he believed was exculpatory evidence, which is the conspiracy. Yes, understood. So the government's final position is that there was no prejudice in this case. Why is that? We don't know what he would have testified to if he had the competency. Because it would not and could not have affected the court's decision ultimately on competency. Because all he could do would be to claim that he's competent. The court had an opportunity to observe him in court, make their own observations, to refer to the expert's opinion, which was unrefuted. And I would claim or argue that under either the statutory or constitutional analysis for finding error that there was no prejudice in this case or finding prejudicial error. Okay. Very interesting. Thank you, Your Honor. Thank you, Mr. O. Okay. Mr. Johnson. I probably won't use my whole two minutes, Your Honor. But in answer to the court's question of what powers you might have, I don't see why not. Because if the courts in the suppression hearing context can fashion the rule of not using the testimony against the person, I don't know why the court couldn't do the same here and establish that as part of as a rule in carrying out Congress's intent with the statutory basis and how these hearings are conducted. Other than that, that's all I would have, unless there's other questions. Three experts. If three experts say he's not competent, I think that that's not conclusive in this context. There's not like a three strikes and you're out. Well, Your Honor, I think it's important that a defendant have his opportunity to talk to the court and give his position on these issues. And I think the statute allows that and requires that and the Constitution as well. A very challenging case. I want to thank both Mr. Johnson, Mr. Holmes, for coming here and for your excellent argument. And you'll be hearing from us in due course. Thank you. Thank you. That's a very interesting and challenging case. Illinwater shall be submitted.
judges: Fisher, Gould, Paez